1  EILEEN M. DECKER
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   REEMA M. EL-AMAMY (Cal. Bar No. 237743)
4  Assistant United States Attorney
   OCDETF Section
5       1400 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-0552
7       Facsimile: (213) 894-0142
        E-mail:    Reema.El-Amamy@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,           No. CR 16-00607M

13           Plaintiff,                GOVERNMENT'S NOTICE OF LODGING OF
                                       TRANSCRIPTS FROM HEARING BEFORE
14           v.                        MAGISTRATE JUDGE IN THE EASTERN
                                       DISTRICT OF NEW YORK
15 MARSHA GAY REYNOLDS,

16           Defendant.

17

18

19      Plaintiff United States of America, by and through its counsel

20 of record, the United States Attorney for the Central District of

21 California and Assistant United States Attorney Reema M. El-Amamy,

22 //

23 //

24 //

25 //

26 //

27

28

1   hereby lodges transcripts of the hearings on March 24, 2016 and March
2   25, 2016 before the Honorable Viktor V. Pohorelsky, United Magistrate
3   Judge in the Eastern District of New York.
4
5
6   Dated: March 31, 2016             Respectfully submitted,
7                                     EILEEN M. DECKER
                                      United States Attorney
8
                                      LAWRENCE S. MIDDLETON
9                                     Assistant United States Attorney
                                      Chief, Criminal Division
10
11                                    _____/s/_____
                                      REEMA M. EL-AMAMY
12                                    Assistant United States Attorney
13                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3   --------------------------------X
                                     :
 4   UNITED STATES OF AMERICA,       :
                                     : 16-MJ-00284 (VVP)
 5                  Plaintiff,       :
                                     : March 24, 2016
 6           v.                      :
                                     : Brooklyn, New York
 7   MARSHA-GAY REYNOLDS,            :
                                     :
 8                  Defendant.       :
     --------------------------------X
 9

10        TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
          BEFORE THE HONORABLE VIKTOR V. POHORELSKY
11               UNITED STATES MAGISTRATE JUDGE

12
     APPEARANCES:
13

14   For the Plaintiff:          ALICIA WASHINGTON, ESQ.
                                 United States Attorneys Office
15                               271 Cadman Plaza East
                                 Brooklyn, New York 11201
16
     For the Defendant:          DENNIS RING, SEIFAN, ESQ.
17                               Law Office of Dennis J. Ring
                                 148-29 Cross Island Parkway
18                               Whitestone, New York 11357

19                               BRAD MAZARIN, ESQ.
                                 Block & Mazarin
20                               277 Broadway, Suite 301
                                 New York, New York 10007
21

22   Court Transcriber:          SHARI RIEMER, CET-805
                                 TypeWrite Word Processing Service
23                               211 N. Milton Road
                                 Saratoga Springs, New York 12866
24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1  (Proceedings began at 2:42 p.m.)

2          THE CLERK: This is Criminal Cause for Arraignment on

3  a removal complaint to the Central District of California, USA

4  v. Marsha-Gay Reynolds, Case No. 16-M-284.

5          Counsel, your name for the record.

6          MS. WASHINGTON: Alicia Washington for the United

7  States, and with me Carolyn Poris who is a special agent with

8  DEA.  Good afternoon, Your Honor.

9          MR. RING:  For Ms. Gay Reynolds, Dennis Ring, R-I-N-

10  G.  Good afternoon, Your Honor.

11          MR. MAZARIN:  Good afternoon, Your Honor.  Brad

12  Mazarin also for Ms. Reynolds.

13          THE COURT: Good afternoon.  Agent Poris, is it?

14          AGENT PORIS: Yes.

15          THE COURT: Would you raise your right hand, please.

16  Do you solemnly swear that the information in this petition

17  regarding the removal of Marsha-Gay Reynolds to the Central

18  District of California is true to the best of your knowledge

19  and belief?

20          AGENT PORIS: I do.

21          THE COURT: Ms. Reynolds, the purpose of the

22  proceeding today is to insure that you understand the charge

23  that you face.  I'll advise you of certain rights you have as

24  a defendant in a criminal case.  We'll schedule any further

25  proceedings that may be necessary here related to this case

3

1    and we'll address the question of bail.

2              Who will be speaking?

3              MR. RING: I will, Your Honor.

4              THE COURT: Mr. Ring, did you receive a copy of the

5    removal petition and the documents annexed to it and have you

6    reviewed that with Ms. Reynolds?

7              MR. RING: Yes, I have, Your Honor.

8              THE COURT: Are you satisfied she understands the

9    charge?

10             MR. RING: Yes.

11             THE COURT: Ms. Reynolds, you were arrested here

12   based on a warrant that was issued in the Central District of

13   California based on a complaint which charges Marsha-Gay

14   Reynolds with possession of cocaine with the intention of

15   distributing it.  Do you understand that, Ms. Reynolds?

16             THE DEFENDANT: Yes.

17             THE COURT: Do you understand the charge?  You have

18   to speak loudly and --

19             THE DEFENDANT: Yes, I do.

20             THE COURT: You have the right to remain silent.

21   That means you need not make any statement about the charge to

22   anyone.  Any statements you make except for statements to your

23   attorneys could be used against you.

24             You have the right to have an attorney represent you

25   in all proceedings.  If you cannot afford an attorney the

4

1  court will appoint an attorney tor represent you at the

2  court's expense.  I understand that you have retained counsel,

3  Mr. Ring and Mr. -- I'm sorry, Mazarin.

4          MR. MAZARIN: Mazarin, yes.

5          THE COURT:  You've been retained and have entered a

6  general notice of appearance with respect to proceedings here?

7          MR. MAZARIN: Yes, we're retained with respect to the

8  proceedings here.  My understanding is she has an attorney out

9  in California as well.

10         THE COURT: All right.  But that's -- as to all

11  proceedings here you will represent Ms. Reynolds.

12         MR. MAZARIN: Yes, Your Honor.

13         THE COURT: You have the right to what's known as an

14  identity hearing, Ms. Reynolds, which means you have a right

15  to have it determined here whether you are the same person

16  that's named in the arrest and complaint that was issued in

17  the Central District of California.

18         Counsel, have you discussed with Ms. Reynolds

19  whether an identity hearing is -- should be conducted here?

20         MR. RING: Yes, I have, Your Honor, and we've waived

21  an identity hearing.

22         THE COURT: And have you discussed that with Ms.

23  Reynolds?

24         MR. RING: Yes.

25         THE COURT: Do we have a waiver form?

5

1          MS. WASHINGTON: Yes, Judge.

2          MR. RING: She's executed it.

3          THE COURT: Ms. Reynolds, did you understand what I

4    explained to you about having an identity hearing?

5          THE DEFENDANT: Yes, sir.

6          THE COURT: Your attorney tells me you're willing to

7    waive that right.  Is that correct?

8          THE DEFENDANT: Yes, sir.

9          THE COURT: I have a document here that memorializes

10   the waiver.  Is this your signature?

11         THE DEFENDANT: Yes, it's my signature.

12         THE COURT: Very well.  I will not schedule an

13   identity hearing here.

14         What is the Government's position with respect to

15   bail?

16         MS. WASHINGTON: Your Honor, the Government requests

17   that the defendant be removed in custody.  The defendant is

18   charged with a very serious drug offense and it's pursuant to

19   Title 21.  So there's a presumption that she is both a flight

20   risk and a danger to the community.

21         The defendant is alleged to have attempted to bring

22   in through security a significant amount of cocaine which

23   weighed approximately 30 kilos and has a street value of

24   approximately $3 million.

25         Some information that's not reflected in the

6

1  Pretrial Services Report but that Your Honor should be aware

2  of is that the defendant's status with her employer is now

3  suspended pending investigation and therefore she lacks any

4  employment which makes her a flight risk.

5          Also, the defendant has significant ties to Jamaica

6  where she is born and we believe that she has extensive

7  travel.

8          Additionally, she has advised that the co-

9  conspirator also has ties to a foreign country, specifically

10 Jamaica and that he was making efforts to flee the country as

11 recently as last night and that according to her he has the

12 ability to obtain travel documents in other names.  It's the

13 Government's belief that this defendant as every incentive to

14 flee the country particularly where she is now facing a

15 mandatory minimum of ten years in light of the amount of drugs

16 that she possessed and the ability for her to possibly receive

17 travel documents in another name through this co-conspirator.

18          THE COURT: Counsel.

19          MR. RING: Judge, we ask that she be released on

20 reasonable bail.  She is not a flight risk nor is she a danger

21 to the community.

22          Upon coming back to New York she retained counsel in

23 California who contacted the U.S. Attorney's Office in

24 California to arrange for her to fly out there, surrender

25 herself, face the charges there and go forward.  The case

7

1  itself then subsequently garnered a great deal of media

2  attention.   The U.S. Attorney's Office out in California, not

3  the Eastern District, then apparently changed their position

4  as to whether or not she should be allowed to do that and

5  instead they said they wouldn't allow that.   So what did she

6  do?   She self surrendered here.   She turned herself in with

7  her mother.   My client is 31 years old.   She has no prior

8  criminal contacts whatsoever.   She's a United States citizen.

9  She's lived with her family here in New York City for the past

10  15 years.   Her mother and I would estimate about -- her father

11  as well and probably about ten other family members are here

12  in the courtroom as well as her pastor.   She has strong ties

13  to the community and there's no indication that she's a flight

14  risk.

15        I indicated she's a U.S. citizen.   She's a graduate

16  of NYU.   She also has an associate's degree from Mercy College

17  and she's currently in addition to having worked for Jet Blue

18  for the past six years as a full time flight attendant she's a

19  full time nursing student as well currently as we speak.   So

20  while she may be suspended by Jet Blue she still is going to

21  continue to go to nursing school to obtain her nursing degree.

22        Judge, the -- I would point out Pretrial Services

23  recommends that she be given bail, that she doesn't be

24  detained.   They indicated a substantial bail package would be

25  sufficient as long as her parents would be willing to do so

8

1    and to sign.  I've spoken to the family.  They're willing to

2    sign a bond on this.  The family has approximately $500,000 it

3    seems to me in equity in various properties that they could

4    use to secure a bond and with that, Judge, there's absolutely

5    no indication she wouldn't head out to California like she was

6    going to on this case prior to the media interest in it.

7             So based upon that, Judge, I respectfully request

8    that a reasonable bail package be set by Your Honor and my

9    client be freed on that.

10            THE COURT: What do you propose?

11            MR. RING: I would propose, Your Honor, a $500,000

12   secured bond would be reasonable.  Her family who's she very

13   close with, very tight with, they will be securing that --

14   family and family friends, Judge.  I want to be clear on that.

15   Including her pastor as one of the folks who's indicated that

16   they would be more than happy to secure.  They know she's not

17   going to flee.

18            THE COURT: Do you have specific properties in mind?

19            MR. RING: We have two properties in mind, Your

20   Honor, that I believe there's approximately $500,000 in

21   equity.

22            THE COURT: Whose properties are those?

23            MR. RING:  Your Honor, her mother is one of the

24   properties, Your Honor, and the other one -- the other

25   property is the property of Reverend Doctor Slater who's here

9

1    also and she's willing to put up -- she has a very close

2    relationship with the defendant and is willing to put up her

3    house as well.  So there's two homes, specific homes.

4            THE COURT: Do you have -- have you provided the

5    Government with any proof concerning the value of the homes

6    and the equity?

7            MR. RING: Not as of yet, Judge, but what I do have I

8    can basically -- the Slater home is I believe is the more

9    significant of the two and there's about -- roughly $350,000

10   in equity in that home and we can certainly get the -- we just

11   got this case recently and we can certainly get the proof

12   together as to -- and provide it so that everyone would be

13   satisfied with that.

14           THE COURT: The Government -- I have one quick

15   question for the Government and then you can respond if you

16   wish, Counsel.

17           Does the Government -- does the United States have

18   an extradition treaty with Jamaica?

19           MS. WASHINGTON: Your Honor, I would have to get back

20   to you on that.

21           THE COURT: Do you know, Counsel?

22           MR. RING: I think we do.

23           MS. WASHINGTON: I thin we do but --

24           MR. RING: I believe we do.  I don't know for

25   certain, Judge.  I don't want to misrepresent that.

10

1          THE COURT: So we have a lot of uncertainty here. Go
2     ahead.
3          MS. WASHINGTON: Just to briefly respond to the
4     arguments that were made.  Again, I represented the amount of
5     the drugs that were recovered is approximately $3 million.  So
6     it's the Government's position that whatever property is being
7     posted the amount of drugs is significantly or the value of
8     those drugs is significantly higher than any property that
9     would be posted to secure her --
10         THE COURT: But that property -- that property, the
11    drug property is in the possession of the Government.
12         MS. WASHINGTON: That is correct.
13         THE COURT: I mean while that's not an insignificant
14    amount it's not money that's available to the defendant.
15         MS. WASHINGTON: True, Your Honor, but the Government
16    -- the Government has reasons to believe that this is not the
17    only time that the defendant has engaged in this conduct.
18         Furthermore, the defendant took advantage of her
19    position as a pre-screened crew member who had a security
20    clearance and so I know the defendant has made statements
21    about she's in nursing school but again, the defendant abused
22    the trust and the security clearance that she had.  So it's
23    the Government's position that the defendant should be removed
24    in custody and if Your Honor is inclined to release the
25    defendant I would ask for a brief stay so that the U.S.

11

1   Attorney's Office in the Central District of California can

2   appeal to the district court there.

3           THE COURT: All right.  Well, you are entitled to

4   that.

5           Is there anything further anybody wants to say?

6           MR. RING: No, Your Honor.

7           THE COURT: I believe that Ms. Reynolds is -- that a

8   bail package of the nature that's proposed by the defendant is

9   sufficient to assure her presence and the safety of the

10  community.

11          MS. WASHINGTON: Your Honor, if --

12          THE COURT: Subject of course to proof as to the

13  value of the property and the court would also impose

14  electronic location monitoring on the defendant.

15          The Government I presume has her passport.

16          MS. WASHINGTON: That is correct, Your Honor.  We are

17  in possession of her passport.

18          THE COURT: She would be subject to home detention

19  but with leave to attend school and any other -- well, attend

20  school and meetings with attorneys, et cetera.

21          Are there any other conditions that the Government

22  would seek to have the court consider?

23          MS. WASHINGTON: Your Honor, the Government would

24  request the conditions that are set forth in the Pretrial

25  Services Report including that her travel be restricted, that

12

1  she maintains residence with her parents.

2          THE COURT: Well, I've imposed home detention.  So

3  that presupposes no travel except to -- well, certainly the

4  Central District and to -- well travel to wherever she needs

5  to go to school.  Maintain residence with her parents which I

6  would -- there is a -- there was no response regarding drug

7  abuse.  So I will impose that requirement that the Pretrial

8  Services is authorized to conduct drug testing and abuse,

9  substance abuse evaluation.

10         Is there anything further?

11         MS. WASHINGTON: No, Your Honor.

12         THE COURT: I need the addresses of the properties

13  and the owners of the properties for the clerk to be able

14  to --

15         MR. RING: Your Honor, I'm going to go right to the

16  stand, Your Honor.

17  (Off the record at 2:55 p.m.)

18  (Back on the record at 3:04 p.m.)

19         THE CLERK: We're back on the record.

20         THE COURT: Counsel, I don't know whether the co-

21  signers have -- let me go on the record here.

22         Have the co-signers had an opportunity to review the

23  entire bond and order setting conditions of release and have

24  you gone over it with them so that they understand the

25  obligations?

1           MR. RING: We would like to do a brief --

2           THE COURT: Let's recess because I want to make sure

3    they understand it.  They're undertaking some major

4    obligations.  I don't want there to be any confusion about

5    that.  So we'll put this on for a second call and I'll take

6    some other matters.

7    (Off the record at 3:04 p.m.)

8    (Back on the record at 3:22 p.m.)

9           THE CLERK: Second call.  We're back on the record,

10   USA v. Marsha Reynolds, 16-M-284.

11          THE COURT: I now have the form of the order setting

12   conditions of release which also includes an appearance bond

13   and I understand that various co-signers as well as the

14   defendant have now signed the bond but I will be addressing

15   them.  So I will ask my courtroom deputy to administer an

16   oath.

17          THE CLERK: Okay.  So would the proposed sureties

18   raise your right hand.  I have to swear you.  The judge is

19   going to ask you all some questions on the record.  Okay.

20                      PROPOSED SURETIES, SWORN

21          THE CLERK: You have to say because it's recording.

22   So you can state your name for the record, please.

23          THE COURT: Counsel, can you allow the surety to

24   approach a little bit?  Thank you.

25          THE CLERK: So please say your name for the record.

14

1          DR.  SLATER:  My name is Susan Slater.

2          THE CLERK: Thank you.

3          MS. REYNOLDS: Vanessa Reynolds.

4          THE CLERK: Thank you.

5          MR. REYNOLDS: Joseph Reynolds.

6          MR. AMOS:  My name is [inaudible] Amos.

7          THE COURT: Dr. Slater, let me ask you first.  This

8  is your signature on this document?

9          DR. SLATER: Can I see, please?

10         THE COURT: You certainly may.

11         DR. SLATER: Yes, sir.

12         THE COURT: Ms. Reynolds, did you sign this document?

13         MS. REYNOLDS: Yes, I did.

14         THE COURT: Mr. Reynolds, did you sign the document?

15         MR. REYNOLDS: Yes, I did.

16         THE COURT: Mr. -- is it Mr. Amos?  Is that your

17  signature?

18         MR. AMOS: Yes.

19         THE COURT: Ms. or Dr. Slater, what is your relation

20  to Ms. Reynolds, how do you know her?

21         DR. SLATER: She's one of my member.

22         THE COURT: When you say -- what do you mean --

23         DR. SLATER: I'm a pastor.

24         THE COURT: Of a church.

25         DR. SLATER: Of a church, yes.

15

1           THE COURT: How long have you known her?

2           DR. SLATER: I know her about six years.

3           THE COURT: All right.  Ms. Reynolds and Mr.

4    Reynolds, it's been represented that you are the parents of

5    Ms. Marsha-Gay Reynolds; is that correct?

6           MS. REYNOLDS: Yes, and I go to the same church.

7    That's my pastor also.

8           THE COURT: All right.  Mr. Amos, what is your

9    relation to Ms. Reynolds?

10          MR. AMOS: Church sister.

11          THE COURT: I'm sorry.

12          MR. AMOS: Church sister.

13          MR. RING: A church sister.

14          THE COURT: A church sister.  She is a church sister

15   of yours.

16          MR. AMOS: Right.

17          THE COURT: All right.  I see.  Dr. Slater, I

18   understand that you own some property at 109-44 142nd Street

19   in South Ozone Park.

20          DR. SLATER: Yes, Your Honor.

21          THE COURT: Am I correct in understanding that you

22   own that with Mr. Amos jointly?

23          DR. SLATER: I would say I put him on it.  I would

24   say yes.

25          THE COURT: Well, I'm a little confused.

16

1           MR. RING: I think what she's saying is she -- it was

2   her home but she added him to the deed, her son.  She added

3   her son to the deed so --

4           THE COURT: Do we have the deed?

5           MR. RING: We don't, no, Judge.

6           DR. SLATER: No, I'll give it to you tomorrow.

7           THE COURT: You are an owner of the property?

8           DR. SLATER: Yes, Your Honor.

9           THE COURT: And Mr. Amos is listed as an owner of the

10  property on the deed?

11          DR. SLATER: Yes, because added is just the same.

12          THE COURT: Is anyone else listed on the deed?

13          DR. SLATER: No, Your Honor.

14          THE COURT: Is there a mortgage on the property?

15          DR. SLATER: I would say some of a mortgage like 70

16  something thousand.

17          THE COURT: Do you know the approximate value of the

18  property?

19          DR. SLATER: Oh, the mortgage?

20          THE COURT: Not on the mortgage.  Of the property,

21  the value of the property.

22          DR. SLATER: It's about $500,000.

23          THE COURT: I understand that Ms. Reynolds, Ms.

24  Vanessa Reynolds you are the owner of some property at 120-14

25  166th Street in Jamaica.  Is that correct?

17

1        MS. REYNOLDS: Yes.

2        THE COURT: Is there any other owner of that property

3   at least on the deed?

4        MS. REYNOLDS: No.

5        THE COURT: Is there -- what is the approximate value

6   of that property?

7        MS. REYNOLDS: It's about 300 and something thousand.

8        THE COURT: Do you know the amount of any mortgage

9   that's on the property, the outstanding amount of the

10  mortgage?

11       MS. REYNOLDS: No, I don't know.

12       THE COURT: Do you have even a rough idea of that?

13       MS. REYNOLDS: No.

14       THE COURT: Is there a mortgage?  I'm making an

15  assumption.  Is there a mortgage on the property?

16       MS. REYNOLDS: Yes, there's a mortgage.

17       THE COURT: And you just don't know how much there is

18  outstanding on that?

19       MS. REYNOLDS: No, I never check on that.

20       THE COURT: Counsel, the Government is entitled to

21  get complete information about the value of the property, at

22  least to the extent that you're able to ascertain it as well

23  as the status of any mortgages on these properties.

24       MR. RING: I think I could give you a rough estimate

25  but from our conversations I think the bulk of the security is

18

1  coming from Reverend Slater's home and it may be about

2  $100,000 in security coming from the Reynolds home.  So, in

3  other words, I would say roughly $400,000 from the first home

4  and roughly $100,000 from the second home is our best guess.

5          THE COURT: All right.  Ms. Reynolds, are you

6  employed?

7          MS. REYNOLDS: Yes, I am.

8          THE COURT: What is your occupation, approximately

9  how much do you earn?

10          MS. REYNOLDS: I'm a nurse.

11          THE COURT: And approximately how much do you earn

12  annually?

13          MS. REYNOLDS: About 85 to 90,000.

14          THE COURT: Mr. Reynolds, are you employed, sir?

15          MR. REYNOLDS: Yes, sir.

16          THE COURT: What is your occupation and approximately

17  how much do you earn?

18          MR. REYNOLDS: Public safety.  It's about 25.

19          THE COURT: Each of you should understand -- let me

20  just confirm this.  I did -- we adjourned so that you could

21  have an opportunity to read the document that you've signed.

22  Did each of you have an adequate opportunity to review the

23  document and to have it explained to you?  Ms. Sla -- Dr.

24  Slater?

25          DR. SLATER: Yes, Your Honor.

19

1          THE COURT: Ms. Reynolds.

2          MS. REYNOLDS: Yes.

3          THE COURT: Mr. Reynolds.

4          MR. REYNOLDS: Yes.

5          THE COURT: Mr. Amos?

6          MR. AMOS: Yes.

7          THE COURT: You should each understand that by

8   signing this document you've obligated yourselves to pay

9   $500,000 in the event that Marsha-Gay Reynolds fails to appear

10  in court when she's required to appear or if she otherwise

11  should violate any of the conditions that are set forth in

12  this document that permit her to be released.  That's the

13  obligation you've undertaken.

14          Dr. Slater, Mr. Amos and Ms. Reynolds, if that

15  obligation should become payable the Government could seize

16  and sell the property that you've posted as security and use

17  the proceeds of that -- of those sales to pay down the

18  obligation.  If the proceeds of the sales aren't sufficient to

19  pay it off then each of you would be still liable for the

20  balance up to $500,000.  So that's the obligation you've each

21  undertaken.

22          Ms. -- Dr. Slater, do you understand that?

23          DR. SLATER: Can you repeat one more time, please?

24          THE COURT: Certainly.  By signing this document you

25  have obligated yourselves to pay --

20

1           DR. SLATER: Yes.

2           THE COURT:  -- $500,000 in the event that Marsha-Gay

3    Reynolds fails to appear in court when she's required to

4    appear in court or if she otherwise should violate the

5    conditions of release that are set forth in the document that

6    you signed.  If that obligation becomes payable because she

7    fails to appear or otherwise violates conditions of release

8    then the Government can seize and sell the property that each

9    of you have posted, that is your residence, Dr. Slater and Mr.

10   Amos, and the residence owned by Ms. Reynolds, use the money

11   that is generated by those sales to pay down the $500,000

12   obligation.  And if there's not enough that comes from the

13   sale of those properties to pay the entire $500,000 then

14   everyone is still liable for the difference up to $500,000.

15   So that's the obligation that each of you is undertaking.

16           So I just want to confirm that you understand that.

17           DR. SLATER: I understand, Your Honor.

18           THE COURT: Ms. Reynolds.

19           MS. REYNOLDS: I understand.

20           THE COURT: Mr. Reynolds.

21           MR. REYNOLDS: Yes, sir.

22           DR. SLATER: Thank you very much.

23           THE COURT: Mr. Amos.

24           MR. AMOS: I understand.

25           THE COURT: Now, we don't have a provision here for

21

1   filing a confession of judgment but that needs to be done

2   by -- is there any reason that can't be done by next Tuesday,

3   three days from now?

4            MR. RING: No reason, Judge.  We can get that done.

5            THE COURT: That will be March 29th.  Thank you.

6            Ms. Reynolds, it appears that you signed this

7   signature -- you signed this document as well.  Is that your

8   signature?  You can stay there.  We can give this to you.  If

9   you could just give this to Ms. Reynolds.  Is that your

10  signature at the bottom?

11           MS. REYNOLDS: Yes, Your Honor.

12           THE COURT: You've undertaken the same obligation

13  that I explained to the co-signers.  Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT: I should also warn you that if you fail

16  to appear or if you otherwise violate conditions of release

17  you can be arrested and prosecuted for another crime, the

18  crime of bail jumping which carries substantial penalties over

19  and above those that apply to the offense that you're now

20  charged with.

21           I do want to add for the record that one of the

22  principle considerations in deciding that Ms. Reynolds is not

23  a risk of non appearance is the fact that she did surrender

24  herself notwithstanding that at the time of the offense, at

25  least as I understand the complaint, there was an effort to

22

1  evade the authorities.  Nevertheless, Ms. Reynolds did

2  voluntarily surrender subsequently and I find that of

3  significance in making the decision that she is a suitable

4  bail risk.

5         Nevertheless as I understand it the Government does

6  wish to contact the U.S. Attorney's Office in the Central

7  District of California which they are entitled to do and

8  therefore I will stay the release of Ms. Reynolds.  They're

9  three hours behind us.

10        MS. WASHINGTON: Correct.  So 24 hours should be

11  sufficient, Your Honor.

12        THE COURT: All right.  We will ask Ms. Reynolds to

13  be returned here in 24 hours.  I'll have to hold Ms. Reynolds

14  until that point.  So we'll put it on for 2:00 tomorrow

15  afternoon.

16        MS. WASHINGTON: Just to advise Your Honor, I did get

17  confirmation that we do have an extradition treaty with

18  Jamaica although they are not obligated to extradite their own

19  nationals but that's not of significance because she is a U.S.

20  citizen.

21        THE COURT: There's no question of preliminary

22  hearing as I understand it.

23        MS. WASHINGTON: That's correct, Your Honor.

24        THE COURT: Is there any other matter for us to

25  address today?

23

1           MR. RING: No.

2           MS. WASHINGTON: Not at this time.

3           THE COURT: Then we are adjourned.  Thank you.

4           MS. WASHINGTON: Thank you.

5  (Proceedings concluded at 3:33 p.m.)

6                         * * * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

24

1       I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5   _____

6                   Shari Riemer

7   Dated:  March 30, 2016

**EXHIBIT B**

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3   --------------------------------X
                                     :
 4   UNITED STATES OF AMERICA,       :
                                     : 16-MJ-00284 (VVP)
 5                  Plaintiff,       :
                                     : March 25, 2016
 6             v.                    :
                                     : Brooklyn, New York
 7   MARSHA-GAY REYNOLDS,            :
                                     :
 8                  Defendant.       :
     --------------------------------X
 9

10        TRANSCRIPT OF CRIMINAL CAUSE FOR BOND HEARING
          BEFORE THE HONORABLE VIKTOR V. POHORELSKY
11              UNITED STATES MAGISTRATE JUDGE

12
     APPEARANCES:
13

14   For the Plaintiff:          ALICIA WASHINGTON, ESQ.
                                  United States Attorneys Office
15                                271 Cadman Plaza East
                                  Brooklyn, New York 11201
16
     For the Defendant:          DENNIS RING, SEIFAN, ESQ.
17                                Law Office of Dennis J. Ring
                                  148-29 Cross Island Parkway
18                                Whitestone, New York 11357

19                                BRAD MAZARIN, ESQ.
                                  Block & Mazarin
20                                277 Broadway, Suite 301
                                  New York, New York 10007
21

22   Court Transcriber:          SHARI RIEMER, CET-805
                                  TypeWrite Word Processing Service
23                                211 N. Milton Road
                                  Saratoga Springs, New York 12866
24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

2

1    (Proceedings began at 2:21 p.m.)

2            THE CLERK: This is Criminal Cause for Status

3    Conference, <u>USA v. Marsha-Gay Reynolds</u>, Case No. 16-M-284.

4            Counsel, your name for the record.

5            MS. WASHINGTON: Alicia Washington for the United

6    States.   Good afternoon, Your Honor.

7            MR. MAZARIN: Brad Mazarin for Ms. Reynolds, Your

8    Honor.

9            MR. RING:  And Dennis Ring for Ms. Reynolds.  Good

10   afternoon.

11           THE COURT: Good afternoon. In response to the

12   Government's request for review of my bail decision yesterday,

13   the district judge in California, Andre Birotte, Jr. has

14   issued a further stay of the order granting release and will

15   consider the application for review before him on April 7th at

16   1:30.   This is in the Central District which I think is Los

17   Angeles.

18           MS. WASHINGTON:  That's correct, Your Honor.

19           THE COURT: So in the meantime Ms. Reynolds is to be

20   transported in custody.  So I will have to enter a commitment

21   order to commit her to the custody of the Marshals for

22   transportation and I do -- I did tell Judge Birotte's clerk

23   that I would urge that the Marshals make every effort to get

24   Ms. Reynolds to the Central District by April 7th which is the

25   day of the hearing.

3

1          MR. MAZARIN: Judge, I just had a procedural question

2   I guess.  Because I spoke with Mr. Goldfarb out in California

3   yesterday and he indicated to me that one of the members of

4   the U.S. Attorney's Office had spoken to him and asked him to

5   stipulate that she could be -- that Ms. Reynolds could be

6   brought out to California and he said no and then two hours

7   later there was basically a statement that oh, we got an order

8   ex parte.  I found that -- I don't appear in federal court a

9   lot so I don't know the way things are done but I found it odd

10  that we had a very fairly conducted contested hearing here

11  regarding Ms. Reynolds bail and then later on ex parte when

12  she has counsel in California that ex parte this is just

13  basically undone out in California.  I just found out it

14  strange.

15          THE COURT: Well, I don't know what happened in

16  California.  It's not strange that review of a bail

17  determination is made in the district that issued the warrant.

18  So I don't think it's accurate to say that the court has

19  undone what happened here yesterday.  It is simply that the

20  court is going to review the bail determination out there --

21          MR. MAZARIN: Understood.

22          THE COURT:  -- rather than here and I'm not -- I

23  don't know what this means.  I don't think you necessarily

24  have to believe that bail won't be granted out there.  This

25  is -- it's a review of the bail decision.  It's being done in

4

1   California and pending that review the judge there believed

2   that Ms. Reynolds should remain in custody.

3            MR. MAZARIN: Understood.  Your Honor, to be clear

4   just the part that I was referring to as strange was that it

5   was -- that the order was issued ex parte by Mr. -- Mr.

6   Goldfarb is her counsel out in California and I'm aware of

7   that.  I would have thought there would be some kind of

8   meeting that included her counsel out there before the stay

9   was granted and that's really all.  That was really the part

10  that I had found unusual.

11           THE COURT: Noted for the record.

12           MR. RING: Your Honor, I just -- one issue that may

13  not need to be addressed at this point but obviously we're

14  hopeful that the bail package will be reviewed in California

15  and found to be sufficient and Ms. Reynolds will be released.

16           In reviewing the equity and the two homes that were

17  posted yesterday that the two folks had signed off, her mother

18  and her pastor, taking a very conservative approach using the

19  city's market value and the current mortgage it appeared to me

20  that it was a little -- about $180,000 short in equity.  So I

21  told the family they could have another family friend who's

22  here who's willing to put up her property.  I have the deeds

23  and everything on that.  There's definitely sufficient equity

24  in that.  In the interest of maybe expediting I obviously hope

25  that she's going to get this package approved.  That suretor

5

1  is here and we could add her today if you'd like to do that,

2  Your Honor.

3          THE COURT: I think it's best to leave all of that to

4  the court in California.  I'm not even sure that I have

5  jurisdiction to enter a further order at this point.  But, in

6  any event, I think that all of that should be dealt with out

7  in California.

8          MR. RING: Okay.  Very good, Your Honor.

9          MS. WASHINGTON: Thank you, Your Honor.

10          THE COURT:  If there's nothing else we're adjourned.

11  (Proceedings concluded at 2:30 p.m.)

12                        *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5   _____

6                         Shari Riemer, CET-805

7   Dated:  March 30, 2016

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25